231 S.W.2d 258 (1950)
DOUGLAS
v.
ST. JOSEPH LEAD CO.
No. 27862.
St. Louis Court of Appeals. Missouri.
June 20, 1950.
Motion for Rehearing or to Transfer to Denied July 18, 1950.
*259 W. Oliver Rasch, Bonne Terre, for appellant.
J. W. Thurman, Hillsboro, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied July 18, 1950.
McCULLEN, Judge.
Orvil C. Douglas, hereinafter referred to as employee, filed his claim for compensation before the Division of Workmen's Compensation on April 7, 1947, based on an injury alleged to have been sustained by him on September 29, 1945, while he was an employee of St. Joseph Lead Company, hereinafter referred to as employer. At a hearing before a Referee of said Division evidence on behalf of the employee and on behalf of the employer was presented and thereafter the Referee made a finding that the employee had sustained a permanent injury to the extent of 40% permanent partial disability of the left foot at the ankle, and awarded him $20 per week for 62 weeks as compensation. The employee thereafter applied for and was granted a review by the Industrial Commission which tribunal found that the employee had sustained 60% permanent partial disability of the left foot at the ankle and awarded him compensation for 93 weeks at $20 per week, amounting to $1,860, subject to a credit of $631.43 for compensation theretofore paid by employer. The employer then appealed to the Circuit Court of St. Francois County where a judgment was rendered affirming the award of the Industrial Commission. From said judgment of the Circuit Court the employer duly appealed to this court.
It is admitted that employer was a major employer and that both employee and employer were operating under the provisions of the Missouri Workmen's Compensation law; that the employer's liability under said law was fully insured; that on or about September 29, 1945, employee sustained an accident arising out of and in the course of his employment; that employer had due notice of the accident and injury and that employee's claim was filed within the time prescribed by law; that the average weekly wage of employee was in excess of $30; that compensation in the sum of $631.43 had been paid to employee and that medical aid had been furnished to him in the amount of $1,621.85.
Counsel for the parties are in agreement in stating in their respective briefs that *260 "The only issue in the case was the nature and extent of the disability sustained by employee as a result of the accident."
It appears from the evidence that on September 29, 1945, while employee was engaged in his work for employer at Desloge, Missouri, his heel was caught between a trolley motor and an empty ore car; that the injury he sustained was to the soft tissue of the bottom pad or plantar surface of the left heel; that there was no injury to the bone or any other part of the foot. A skin grafting operation was performed on employee's left heel by Dr. Frank McDowell a short time after the accident.
Employee testified that his left heel is tender; that if he stands on his feet three or four hours a day his arch gives him considerable trouble; that he is wearing a special shoe and has worn it since the injury; that most of his weight is borne on the instep; that he cannot stand any weight on the heel when he is barefooted but is required to walk on the ball or front part of his foot. During the hearing the Referee examined employee's foot and shoe.
Dr. John F. Rutledge testified on behalf of employee that on May 8, 1948, he examined employee at his office and found that his left heel was covered by skin graft, about two inches by four inches in size, which covered the weight bearing portion of the heel; that the skin was a thin covering of the heel bone unsuited to stand the strain of weight bearing even though the skin graft had been successful; that employee was wearing at the time a special shoe which threw the weight on his arch and caused a painful arch; that for the purpose of weight bearing employee had lost the use of his left heel; that the condition was probably even worse than if he had an artificial foot so far as weight bearing was concerned; that the special shoe then worn by employee was built up in the instep so that the weight normally thrown on the heel bone would be thrown on the instep; that he could feel the bone irregularities of employee's heel through his skin and that subcutaneous fat is not a substitute for the normal, tough heel pad; that employee could not wear a normal shoe and be on his feet; that employee has a total disability for a working man whose weight bearing is the essential function of the heel bone; that from the standpoint of the man's ability to work he would be better off if the foot were removed at the ankle joint.
Dr. Rutledge further testified that employee's foot as it is is of no use to him for weight bearing; that employee could drive a car and operate machinery that would require the use of the fore part of his foot, but that he could not walk very much or very far without pain because the arch of the foot is not constructed for weight bearing; that the arch may be all right now but will be weakened by weight bearing which is not a normal function for the arch; that employee would probably be better off in walking with an artificial foot than with the foot he now has; that in running, the heel bears no weight but in standing it bears practically all of the weight; that in walking, the heel bears no weight but in a standing position the heel would bear at least 90% of the weight.
Dr. Harry M. Roebber testified on behalf of the employer that he examined employee on June 29, 1948, and found that graft pad had been substituted for the injured heel pad; that the grafted skin and tissue under the skin appeared to be healthy; that there was tenderness present in the heel pad on pressure; that there was no restriction of motion in the foot and ankle and there was no bone injury; that the skin graft covered at least 2/3 of the medial surface of the heel and uninjured normal skin on the lateral portion of the heel. The witness gave it as his opinion that the heel would hurt if the employee walked in a normal shoe.
Dr. Roebber further testified that 1/3 or less of the total weight borne by the foot is borne by the heel. He gave it as his estimate that employee had lost 30% of the use of the foot from the ankle joint down; that most of the weight bearing facilities which employee had prior to his injury are gone.
In a deposition introduced by employer, Dr. Frank McDowell of St. Louis testified *261 that he specialized in plastic surgery; that he treated employee and replaced his left heel pad with a flap of skin and fat taken from the top of his thigh in November 1945, and that the skin grafting was done in a series of three operations over a period of 21 days; that he saw employee in November 1946, at which time he was completely healed and was walking; that he recommended the employee should be able to work at any job which did not require him to be on his feet most or all of the time; that employee's condition was the same in June 1948; that employee should wear an arch support to keep his weight off his heel or else keep a rubber cushion under the heel in the shoe; that employee could walk as much as a mile a day without the arch support; that there will be no change in his condition; that it is stationary; that employee is better off with his foot than with an artificial foot; that with an artificial foot the weight would be borne on the ankle; that in the opinion of the witness employee is disabled 30 to 40% at the ankle.
We agree with employer's counsel that this court is authorized to determine upon the whole record whether the Industrial Commission could reasonably have made its findings and reached its result from the evidence, and that we have authority to set aside decisions clearly contrary to the overwhelming weight of the evidence. Constitution of Missouri, Article V, Section 22, Mo.R.S.A.; Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W. 2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55; Evans v. Farmers Mut. Hail Ins. Co. of Mo., Mo.App., 217 S.W.2d 705.
We are unable to agree, however, with employer's contention that "The evidence shows, without any substantial dispute, that respondent's disability does not exceed 40% of the foot at the ankle, as found by the Referee." Employer strongly urges that the Circuit Court erred in affirming the final award of the Industrial Commission because the Commission passed on the credibility of the witnesses without deference to the findings, involving the credibility of the witnesses, made by the Referee before whom most of the witnesses gave their testimony. Employer argues that the credibility of the witnesses is a matter to be passed on solely by the Referee before whom they appeared and testified. We are of the opinion that employer's contentions cannot be sustained upon any reasonable view of the statutes governing Workmen's Compensation claims.
If we were to hold that the findings of a Referee must be deferred to, it would be equivalent to holding that the Referee is the supreme authority and that his findings are binding upon the Commission and on the Circuit Court as well as upon this court merely because the witnesses in such a case as this appear before the Referee but do not appear before said reviewing tribunals. A mere reading of the statutes governing Workmen's Compensation shows that the duties and scope of authority of Referees are positively defined and clearly limited. They are merely the servants and agents of of the Commission. To adopt employer's view would make referees the masters of and superior to the Commission. Neither the statutes nor the decisions of our courts warrant such a view.
In Section 3747 R.S.Mo. 1939, Mo.R.S.A. Section 3747, which authorizes the appointment of referees and gives them jurisdiction to hear and determine issues submitted to them, it is provided: "The division shall appoint such number of referees as it may find necessary. * * * The referees appointed by the division shall only have jurisdiction to hear and determine claims upon original hearing and shall have no jurisdiction whatsoever upon any review hearing either in the way of an appeal from an original hearing or by way of re-opening any prior award. * * * Any award by a referee upon an original hearing shall have the same force and effect, be subject to the same review and appellate procedure, and enforceable in the same manner as provided elsewhere in this chapter for similar awards by the commission or any member thereof. * * *" Section 3747 R.S.Mo. 1939, as reenacted, Laws Mo.1945 pages 1996-2001, Section 3747. (Emphasis ours.)
*262 Section 3731 R.S.Mo.1939, Mo.R.S.A. Section 3731 provides: "If an application for review is made to the commission within ten days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, or, if deemed advisable, as soon as practicable hear the parties at issue, their representatives and witnesses and shall make an award and file same in like manner as specified in the foregoing section." (Emphasis ours.)
The intention of the Legislature to make the Commission superior in authority to its referees for the determination of claims is clearly shown by Section 3730 R.S.Mo. 1939, Mo.R.S.A. Section 3730 which provides: "Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the commission may at any time upon a rehearing after due notice to the parties interested review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter, * * *." (Emphasis ours.)
It is true that the statute, Section 3730, supra, refers specifically only to rehearings on a change in condition, but the broad sweeping power given to the Commission to end, diminish, or increase "any" award, shows clearly it was not the intention of the Legislature to make the findings of referees final and binding upon the Commission or upon other reviewing tribunals, if, upon consideration of all the evidence, they should reach a conclusion different from that of a referee.
Section 114(d) of the New Civil Code, Laws Mo.1943, Mo.R.S.A. Section 847.114(d) as well as the cases of Wood v. Wagner Electric Corporation and Seabaugh's Dependents v. Garver Lumber Manufacturing Co., supra, and other cases relied on by employer in support of its argument, that this court should defer to the findings of the referee and disregard the Industrial Commission, do not support employer's extreme view on this point.
It will be helpful to refer to the exact language of the statute dealing with the subject of credibility of witnesses in such cases as Workmen's Compensation cases which are reviewed in the Circuit Court without a jury. Section 114, supra, of the New Civil Code, Laws Mo.1943, p. 388, Mo.R.S.A. Section 847.114, which governs the trial of cases without a jury, provides in subdivision (d) that, "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (Emphasis ours.) It will be noted that said section does not deal with "Referees" or the "Industrial Commission." It deals only with the duties of the "appellate court" and the "trial court." Hence, there is no foundation either in said statute or in any court decision for the view that we must disregard the findings and award of the Commission and treat as binding the findings and award of the referee in such a case as this.
Furthermore, there is nothing in the decisions of our Supreme Court, in the Wood case or in the Seabaugh case, supra, to indicate that the court intended that the findings and award of a referee in a Workmen's Compensation case should be regarded as binding on the Industrial Commission on review merely because witnesses appeared before the referee. The exact language of the court in the Wood case, supra, on this point was, "Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony." [355 Mo. 670, 197 S.W.2d 649] This plain, clear language is simply the statement of a long established principle followed by the courts for many years in reviewing equity cases, which are non jury cases, and is the same principle embodied in Section 114(d) of the New Civil Code, Mo.R.S.A. supra.
However, to say that the application of the principle of due deference means *263 that the reviewing tribunals must abdicate their own functions and powers and yield to the findings of those "before whom the witnesses gave oral testimony" is to distort the meaning of the court's language and misjudge the purpose of a very simple rule. The principle of due deference to the findings of those before whom witnesses gave oral testimony, sometimes referred to as triers of the facts, is applicable only in situations where the evidence to be reviewed is evenly balanced, or very close to being evenly balanced, and the reviewing tribunal is in grave doubt as to the proper decision to make. In such a situation the credibility of witnesses becomes an extremely important factor in determining where the actual truth lies. Experience, Wisdom, and Justice all combine to suggest in this situation that those before whom the witnesses gave oral testimony were in a far better position to determine the credibility of the witnesses and the weight to be given to their testimony than any reviewing tribunal could be, because the reviewing tribunal sees only the cold record and does not have an opportunity to judge the witnesses who gave the testimony. Therefore, in deference to this advantage of the trier of the facts, the reviewing tribunal, in a close case, resorts to this well known principle by putting into the scales of justice the additional factor of deference to the findings made by the trier of the facts and thereby reaches the same decision as that reached by the trier of the facts. Due deference to the findings of the triers of the facts does not mean, however, that the reviewing tribunal should fail to perform its own proper function of reaching its own conclusions on the whole evidence. To give the principle of due deference any such meaning or application as is contended for by employer herein would render all reviews futile and an unnecessary expense. In cases such as the one at bar where on the whole record there is a clear showing of ample substantial, competent evidence to support the finding and award of the Commission, the principle of due deference to the findings of the referee has no application whatsoever.
We have set forth the testimony of the witnesses at length and need not repeat it here in detail. It is sufficient to say here that Dr. Rutledge testifying for employee gave it as his opinion that for the purpose of weight bearing employee has lost the use of his left heel which leaves employee in a condition "probably even worse than if he had an artificial foot, as far as weight bearing is concerned." Dr. Rutledge further testified that he thought employee "has a total disability for a working man whose weight bearing is the essential function of the heel bone," and that he thought from employee's standpoint with regard to his ability to work employee would be better off if the foot were removed at the ankle joint.
On the other hand, Dr. Roebber testifying for employer gave it as his opinion that employee has lost 30% of the use of the foot at the ankle joint. Dr. McDowell, testifying for employer, estimated that the percentage of employee's disability was 30 to 40% at the ankle. It will thus be seen that the Commission had evidence before it, concerning employee's disability, ranging from 100% to 30% from the ankle joint down. We are of the opinion that with the testimony of all the doctors and the testimony of employee himself showing the nature and extent of his injury and the effect of the injuries on his ability to walk and to work and to use his foot, there was substantial, competent evidence in the record to justify the Commission in arriving at the conclusion that 60% loss of the use of the foot was a just and reasonable figure.
Under the decisions of our Supreme Court we cannot substitute our own judgment for that of the Commission, although we are authorized to set aside the Commission's findings when they are clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corporation and Seabaugh's Dependents v. Garver Lumber Mfg. Co., supra. Viewing all the evidence in the whole record, we are unable to say that the decision of the Commission is against the overwhelming weight of the evidence. On the contrary, we find that the Commission could *264 reasonably have reached the result it did upon a consideration of the whole evidence.
Employer contends that the trial court erred in affirming the final award because the Industrial Commission exceeded its authority in awarding more weeks of compensation than provided by law. We are unable to agree with employer's contention. Employer's argument appears to be based upon the theory that in making an award for injuries the Commission should have ignored the medical testimony given for employee, and confined itself exclusively and rigidly to the actual physical and anatomical aspects of the injuries without any regard for the effects thereof on employee's whole foot and his use of it. Employer's own witness, Dr. McDowell, gave testimony which shows that the Commission was well within the evidence in making the award based upon the loss of the foot at the ankle. His testimony was:
"Q. You recognize the fact then, of course, that he will never be able to walk on that heel like he did before? A. That is correct.
"Q. And you recognize the fact that any type of lifting, or considerable walking, even with the shoe he has now, that he would be affected considerably? A. That is correct.
"Q. And you recognize the fact that he cannot do any heavy lifting or extensive walking, even with the shoe that he now has, do you not, Doctor? A. He could do some heavy lifting, but not a great deal. And he could do a moderate amount of walking, but not a great deal."
The doctor further testified that the skin which he had grafted on employee's heel was very soft and flexible and could be pulled as much as a half inch. In this connection the doctor testified:
"Q. And it covers the entire ball of the heel and goes around to the back of the heel up to about half inch or such a matter on the heel, doesn't it? A. Yes.
"Q. The entire heel is gone? A. The soft tissues of the heel are gone; yes, sir.
"Q. The pad? A. The soft tissue pad; yes, sir.
"Q. And that was completely cut off of there before you performed this plastic surgery on it, wasn't it? A. Yes, sir.
"Q. So all he has now is the fatty tissue and the skin off of a portion of his leg up here, I believe that you put on there? A. Yes, sir.

* * * * * *
"Q. If the heel could bear the weight there would be no need for the arch support, would there? A. That is right.
"Q. And that is the sole purpose, is to take the weight off of the heel? A. Yes.

* * * * * *
"Q. And if he cannot stand to bear weight now he never will be able to stand to bear weight on that heel? A. That is right."
It will be recalled that there was testimony on behalf of employee that he had a 100% loss of the use of his foot at the ankle for which the statute, Section 3705 R.S.Mo.1939, Mo.R.S.A. Section 3705, provides compensation for 155 weeks. However, the Commission did not base its findings and award on a 100% loss, but reduced it to 60% or 93 weeks, thus showing that it gave consideration to all the testimony on this point. We are of the opinion that there was ample, substantial, competent evidence to justify the award of 93 weeks of compensation.
We find no reversible error in the record andthe judgment of the Circuit Court, affirming the findings and award of the Commission, is affirmed.
ANDERSON, P. J., and HUGHES, J., concur.