**D. R. McADAMS, Employee-Respondent,**

v.

**SEVEN–UP BOTTLING WORKS,
Employer-Appellant,**

and

**Safety Mutual Casualty Company,
Insurer-Appellant.**

**No. 24902.**

Kansas City Court of Appeals.

Missouri.

June 3, 1968.

Renderer & Nolde, William B. Kelleher, St. Louis, for appellants.

Hulen & Hulen, Gary A. Tatlow, Moberly, for respondent.

CROSS, Judge.

This is a workmen's compensation case. The employer, Seven-Up Bottling Works, and its insurer, have appealed from a judgment of the circuit court affirming a final award of compensation benefits entered by the Industrial Commission in favor of claimant-employee D. R. McAdams.

The original proceeding was before a referee. Based on the evidence, consisting of testimony by claimant and medical reports and records, the referee found that claimant had sustained an accidental injury arising out of and in the course of his employment which resulted in injury to his left arm at the shoulder, and made an award in claimant's favor in a total amount of $1,670.89 based on a healing period of 20 weeks and a finding of 20% permanent partial disability to the left arm at the level of the shoulder.

On application by claimant the Industrial Commission reviewed the proceedings, without further hearing of testimony and oral argument, and made a final award affirming the award of the referee with the modification that the permanent partial disability of the left arm at the shoulder amounted to 100%, and that the total award of compensation be in the sum of $6,720.84. Appellant assigns that "The amended award of the Industrial Commission, as affirmed by the Circuit Court

of Randolph County, is in error in its award to the Respondent for the reason that said award is not warranted or justified by sufficient competent evidence, as provided by law."

The facts are not in dispute except as to the extent of claimant's injury and his disability rating. Claimant, approximately 75 years old at the time of the accident, had been an employee of Seven-Up for the previous seven or eight years. As to his duties he stated that he "nailed up the cartons and folded cartons and things like that in the plant." The accident occurred at the Seven-Up bottling plant in Moberly on the morning of February 24, 1965, while claimant was eating a sandwich and drinking coffee. He was seated next to a "pallet" stacked with some 112 "soda shells" (containers for bottles filled with 7-Up), when a fellow employee operated a "tow-motor" loaded with 1700 pounds of syrup in such a manner as to strike the pallet, causing the load of soda shells to fall onto claimant, and knock him to the floor. In claimant's words, "Well, he just backed up and here he come with all that syrup and hit that whole pallet of *shelves* (shells) and knocked it over on me. * * * They was 112 on a pallet and he hit that and knocked it over on me, all them shells. * * * About 110 fell on me, there's a 112 in a pallet." The shells struck claimant on the shoulder, arm, neck and ear and pinned him against some other shells, causing injury to the parts named. He was unable to say whether he lost consciousness—"it hurt so bad that I just couldn't tell what happened hardly." He finished the day's work but was unable to sleep that night and reported his injury to his supervisor the next morning. The employer sent claimant to Community Memorial Hospital where he was first examined by Dr. W. H. McCormick and given physiotherapy treatment.

Three days later he sought the medical services of his family physician, Dr. Robert *Hasson*, but continued to have physiotherapy at Community Memorial Hospital until May 19, 1965, 22 treatments in all. Claimant remained in the care of Dr. Hasson regularly up until the date of the hearing.

In August of 1965 Dr. Hasson referred claimant to Dr. Grafton A. Smith of Columbia. Dr. Smith entered claimant as a patient at Boone County Hospital where he underwent a general clinical examination and treatment and bronchoscopy performed by Dr. Smith. After approximately one week he was released from the Boone County Hospital and transferred to the University of Missouri Medical Center at Columbia, where he was examined and given X-ray therapy by Dr. William J. Stewart and observed by other doctors and a number of students. Shortly before the hearing claimant was given a complete examination by Dr. James E. Campbell at Macon. Claimant is unable to perform any work and has not returned to employment since the accident.

In support of their contention that the circuit court erred in sustaining the commission's award as modified to raise the referee's disability rating of 20% permanent partial disability of the left arm at the level of the shoulder to 100%, appellants first submit that "Though it is the award of the Industrial Commission in compensation proceedings that is reviewed, (the) Referee's award and findings are a part of the record and should be given due consideration." Appellants take the position that since the evidence was heard by an experienced and able referee, who had not only the medical and hospital reports before him, but also the opportunity to observe the employee and to question and examine him, the referee was in a superior position to evaluate the evidence of claimant's disability than was the commission, which heard no additional evidence or argument. Appellants charge that the commission "for no stated reason whatsoever, ignores, disregards, and in effect overrules the findings and conclusions of the trial referee" and that the commission's amended award "is necessarily based on specula-

tion and conjecture." This contention runs counter to the law as the courts have declared it.

■ Although the referee's findings of fact with reference to the percentage of disability is a favor to be considered in determining whether the Industrial Commission's award is supported by competent and substantial evidence, it is the award of the commission and not the award of the referee which is reviewed by the court. Barron v. Mississippi Lime Company of Missouri, Mo.App., 285 S.W.2d 46. The duty of the Industrial Commission is to review the record, determine credibility of the witnesses, the weight to be given their testimony, to resolve any conflict therein, and as a fact finding tribunal to reach its own conclusions, *independently of the findings made by the referee*. The findings of the referee are in no way final and binding upon the Industrial Commission if, upon a consideration of all evidence, the commission reaches a conclusion different from that of the referee. Brown v. Griesedieck Western Brewing Co., Mo.App., 250 S.W. 2d 803. As stated in Douglas v. St. Joseph Lead Co., Mo.App., 231 S.W.2d 258: "If we were to hold that the findings of a Referee *must* be deferred to, it would be equivalent to holding that the Referee is the supreme authority and that his findings are binding upon the Commission and on the Circuit Court as well as upon this court merely because the witnesses in such a case as this appear before the Referee but do not appear before said reviewing tribunals. A mere reading of the statutes governing Workmen's Compensation shows that the duties and scope of authority of Referees are positively defined and clearly limited. They are merely the servants and agents of the Commission. To adopt employer's view would make referees the masters of and superior to the Commission. Neither the statutes nor the decisions of our courts warrant such a view." In the recent case of Miranda v. American Refrigerator Transit Co., Mo.App., 392 S.W.2d 413, the court had the instant question before it and

held there was no merit to the point that the commission in making the award had not given due consideration to the referee's finding and award. The court there said: "It is true that the finding of the referee is of importance and should be considered together with all the facts and circumstances. Such findings carry considerable weight, especially where there is a question as to the credibility of witnesses. But such findings are not conclusive, either on the commission or this court. Banks v. City of Hannibal, supra, [Mo.App., 283 S.W.2d 909] Michler v. Krey Packing Co., supra, [363 Mo. 707, 253 S.W.2d 136]. There is nothing in the record to show that the commission failed to consider the referee's report." Likewise, in the instant case, there is nothing in the record to show that the commission did not in fact give due consideration to the finding and award of the referee. We decline to rule that the commission's award, as modified, is erroneous merely because the commission has not seen fit to adopt the referee's report and has made its own determination of claimant's disability rating.

■ Appellants additionally contend that the commission's findings of 100% disability of the left arm at the level of the shoulder is not based on competent evidence as required by law and is contrary to the overwhelming weight of the evidence. In deciding these issues it is not the province of this court to weigh the evidence and substitute its judgment for that of the commission. Our review is limited to determining whether the commission could reasonably have made its findings and reached its results upon the evidence before it. If there is competent and substantial evidence upon which to base the award and if such award is not clearly contrary to the law or the overwhelming weight of the credible evidence, we are bound to affirm it. Smith v. Terminal Transfer Co., Mo.App., 372 S.W.2d 659, Wilhite v. Hurd, Mo.Sup., 411 S.W.2d 72. In considering whether the commission could reasonably have made its findings, we observe the rule that the ap-

pellate court must view the evidence in a light most favorable to the award and the prevailing party. 29A Mo.Digest, Workmen's Compensation, ☞1935. In accordance with those guidelines, we proceed to state facts pertinent to the questions remaining for decision.

Claimant's oral testimony persuasively indicates the extent of injury to his left arm at the shoulder level. He testified that he had no use of it, and demonstrated that there was an audible noise when he moved his shoulder which he stated was accompanied by pain and numbness. Claimant, a widower, stated that he was unable to do his own housework, or any other kind of work, and that he had not been able to return to his employment since his accident. Additionally claimant introduced into evidence written reports of Dr. Smith, Dr. Campbell, and Dr. Hasson. Dr. Smith submitted written report dated March 2, 1966, in which he stated:

"I am writing in reference to Mr. Donnie Ray McAdams whom I treated as a hospital patient from August 2, 1965 through August 7, 1965 and whom I again examined on January 25, 1966. * * * Since the time of the accident the patient has had severe pain in the cervical region, radiating into the arm with associated numbness and tingling of the arm of rather extensive and severe degree. In fact, he has progressively been unable to utilize the use of the arm or to extend it from the body for the past four to five months. The pain also radiates up through the left ear and the back of the neck and down the shoulder, arm and into the hand with numbness and tingling, particularly of the third and fourth fingers on the left hand, but numbness occurs intermittently over the entire hand. On occasion his shoulder has swollen somewhat, becomes very tender and he is unable to move it or extend it from his body in any way. Intermittently there is a slight improvement only. He was recently seen by Dr. William Stewart who gave him some x-ray treatments to

the shoulder joint for the bursa involvement and the capsulitis of this shoulder which now is becoming close to frozen due to inactivity. This situation has really been a little bit progressive since the time I saw him in August, 1965 and has become more severe with the cold weather as one would expect. At this time this individual has become completely disabled by the pain and discomfort and loss of use of his shoulder. * * * It is my feeling at the present time that this man is completely disabled from gainful employment in the manner that he is accustomed to working and I would estimate the injury currently is of the nature of 20 per cent total disability and permanent in nature. There could possibly be slight improvement in the symptomatology during the summer months, however with the re-instatement of the cold weather later and with progressive arthritis which one would expect and further disuse of the left shoulder, this patient will become progressively more disabled in my opinion as time will progress."

Dr. Campbell in a report dated June 27, 1966, stated the following:

"There is marked limitation of all motion of the shoulder joint. Lateral abduction is limited to about ninety degrees. Anterior elevation of the arm is limited to about sixty degrees before pain occurs. Posterior rotation is painful and markedly limited. On motion to the point of pain, there is palpable and audible crepitation in the joint. The snapping in the joint can be heard several feet away. * * * He is totally disabled from any employment such as he has done in the past or from any gainful employment."

Dr. Hasson, claimant's family physician, submitted the following final report on claimant's condition, dated June 29, 1966:

"I re-examined Mr. D. Ray McAdams after a period of two months, regarding his left shoulder girdle.

"At this examination, on June 28th, he was unable to raise the arm past 90 de-

grees in any direction. There was weakness in the grasp of the left hand, there was pain on motion of the head and neck, and pain on motion of the shoulder joint; there was pain and tenderness on palpation of the shoulder joint and of the muscles involving the shoulder girdle, primarily those inserting on the scapula.

"This much functional impairment of the left upper extremity at this man's age represents complete disability, insofar as earning a living in his occupation."

Appellants introduced medical reports submitted by Dr. Stewart and Dr. Lynn O. Litton, who saw him at Missouri Medical Center. In a letter dated January 19, 1966, Dr. Stewart stated:

"I should estimate his *permanent* partial disability, today, to be 30–35% of the left upper extremity at the level of the shoulder." (Emphasis supplied.)

Dr. Litton reported in a letter dated November 8, 1965, that claimant had a permanent injury involving the left shoulder. His report in its entirety is as follows:

"It is my opinion that this patient has a tendonitis of the rotator cuff and biceps involving the left shoulder. The cause of the condition is the injury he incurred. It is my opinion that he does have a *permanent* injury and based on limitation of motion, atrophy and pain I would rate him about 15% to 20% disabled of the left upper extremity." (Emphasis supplied.)

Appellants have strenuously challenged the commission's authority to enter an award based on any higher percentage of disability than the maximum percentage estimated by the expert witnesses whose reports appear in evidence. Appellants argue as follows: "Inasmuch as the maximum medical concerning permanent partial disability at the level of the left shoulder is 35% (Dr. Stewart's estimate), employer feels that the Industrial Commission should be foreclosed from entering an award in

the amount of 100% at the level of the left shoulder."

■ Thus it appears to be appellant's view of the law that the commission has no power to evaluate disability in a percentage that is not specifically suggested or stated by the medical witnesses. No such limitation is placed on the commission by statute or court decision. To the contrary it has been repeatedly said by the courts that the commission is not conclusively bound by or restricted to any percentage estimate stated by doctors and that the extent and percentage of disability is a finding of fact within the special province of the commission to determine. Barron v. Mississippi Lime Company of Missouri, Mo.App., 285 S.W.2d 46. Johnson v. Fogertey Bldg. Co., Mo.App., 194 S.W.2d 924. "What the percentage shall be in a given case is a matter within the special province of the commission to determine." Chapman v. Raftery, Mo.App., 174 S.W.2d 352. "Moreover, it has been held in a number of cases that the Commission is not bound to follow the exact percentage of disability estimated by particular medical experts, but may reach its own conclusion as to the percentage of disability allowable upon the facts, as shown by all the evidence in the record, and that the Commission's finding based on substantial competent evidence in the record is conclusive and binding on the appellate court." Johnson v. Fogertey Bldg. Co., supra.

■ Our review of the entire record leads us to believe that the medical reports in evidence and claimant's testimony have presented facts to the commission amply sufficient to warrant the conclusion that claimant had sustained a complete functional impairment of his left arm at shoulder level, permanent in nature, and to justify the commission's finding that the body member in question had suffered disability amounting to 100%. The totality of function loss is clearly established by claimant's oral testimony and medical evidence. Appellants' medical reports specifically at-

test the injury's permanence. Consequently we rule that the Industrial Commission's award, as amended, is supported by substantial, competent evidence, that it is not contrary to the overwhelming weight of the evidence, and that the circuit court did not err in affirming it.

The judgment is affirmed.

All concur.