Vernon HAGGARD, Employee-Respondent,

v.

SYNDER CONSTRUCTION COMPANY, Employer, and Western Casualty & Surety Co., Insurer, Appellants.

No. 25580.

Missouri Court of Appeals,
Kansas City District.

April 3, 1972.

Dean S. Johnston, Joplin, for appellants.

William J. Cason, Clinton, for employee-respondent.

SHANGLER, Chief Judge.

The employer and insurer appeal from a judgment of the Circuit Court affirming the award of the Industrial Commission in favor of the employee based upon a rating of twenty per cent permanent partial disability of the body as a whole. While appellants concede that respondent employee suffered a permanent injury, they contend it was confined to the left shoulder and that the rating made on the body as a whole is neither authorized by law nor

otherwise supported by competent and substantial record evidence.

Employee, Vernon Haggard, was an iron worker in the construction of a bridge. On August 16, 1967, in attempting to retrieve some work tools, he slipped on some gritty concrete, fell over a steep embankment of eight feet, and continued to roll for another forty feet or so. When he rose up, he noticed very little use of his left arm which pained him very much. He was rather bruised all over. His back, including the lower back, hurt and his shoulder and neck also troubled him. After thirty minutes he quit working. The next morning he was referred by the job superintendent to Dr. Haynie. The employee's primary complaint and concern were the inability to use his shoulder and left arm, which he described as "completely helpless". Haggard testified that on that visit, he reported his neck, shoulder and back aches to Dr. Haynie who then treated those areas with heat. He was seen by Dr. Haynie intermittently until September, 1969. During this time, the employee was also treated by Dr. Post, whom he had engaged, and to whom he complained of neck and back injuries. Following the accident, at the instance of the employer, Haggard was hospitalized for a week of physical therapy.

Dr. Haynie's report, given in evidence, shows that the treatment he accorded the employee was confined to the left shoulder. (It was stipulated that had Dr. Haynie been a witness, he would have testified that the employee made no complaint of back or neck injury as the result of the accident until January, 1968, when the employee reported his back had popped as a result of a sneeze, and then in September, 1969, shortly before the claim was heard.) Dr. Haynie saw no improvement to the shoulder from the regimen of treatment, and because muscular atrophy was developing over the left scapula, referred the employee to Dr. Pucci, a neurologist. No neurological defect was found, but Dr. Pucci detected much tenderness overlying the deltoid and trapezius muscles and con-

cluded the atrophy was due to misuse because of a contusion around the shoulder capsule involving the deltoid muscle. Dr. Haynie determined that the employee was virtually one hundred per cent disabled from performing his work duties and that such disability was probably permanent.

On March 11, 1968, appellants referred the employee to Dr. Chase, an orthopedic surgeon. It was his testimony that the employee complained only of pain and stiffness of the left shoulder; he did not complain of his neck or back. Notwithstanding, he x-rayed the cervical area of the spine "(t)o rule out pathology in the cervical spine which would explain the pain he was having in his shoulder". Dr. Chase found the employee had suffered a partial rupture of the left shoulder joint and recommended that the symptoms be relieved surgically by a partial excision of the acromion. The employee declined surgery. Dr. Chase rated the disability at 20% of the shoulder.

Dr. Charles F. Fee, an orthopedic surgeon, testified for the employee. When he first examined Haggard on July 19, 1968, the employee made complaint of pain in the back and neck, spasms of the neck, and partial paralysis of the left arm and shoulder. Although examination of the neck disclosed no spasm, Dr. Fee found palpable crepitus on motion of the neck, slight limitation of flexion, and marked limitation of right and left rotation and lateral flexion. X-rays of the cervical spine revealed some loss of the normal curve with narrowing and degeneration of the intervertebral interspaces. He found some tenderness in the lumbo-sacral joint and some osteoarthritis in the lumbo-sacral spine. Dr. Fee diagnosed the shoulder injury as a tear of the rotator cup with resultant minimal atrophy of the left infraspinatus muscle and atrophy of the teres group. It was his opinion, given with reasonable medical certainty, that the accident produced the shoulder injury, that the neck condition was either produced by the accident, or, if pre-existing, was aggravated by the acci-

dent, and that the back condition was pre-existing and agggravated by the accident. Dr. Fee re-examined Haggard on October 2, 1969, and rated his permanent disability "at 15 or 20 per cent of the left upper extremity at the shoulder, and disability of his neck (at) five to ten percent of the neck as a whole (sic) and disability of the lower back (at) up to five per cent".

The referee found the employee had suffered injuries to the neck and left shoulder as the result of the accident and awarded him compensation for permanent partial disability based on 20% of the body as a whole. The Industrial Commission adopted that award.

The appellant's contention comes in two components. The first is that a shoulder injury will not support a rating on the body as a whole. The second, that the Industrial Commission did not give proper weight to that evidence which favored appellants' contention that the employee injured his shoulder only, not also his back.

■ Turning to the first point, as appellants concede, all the evidence shows the injury was to Haggard's shoulder, not his arm. It is settled that a permanent injury to the shoulder is not a loss specifically scheduled in Sec. 287.190, subd. 1(1), V.A. M.S.—as is the loss (including loss of use) of the arm—but is one for which compensation is to be fixed according to the proportionate relation the injury bears to the loss of normal function of the body as a whole. Bumpus v. Massman Construction Co., Mo.App., 145 S.W.2d 458, 461 [1–3]; Davis v. Brezner, Mo.App., 380 S.W.2d 523, 527 [4, 5]; Sec. 287.190(3) V.A.M.S. Appellants' argument is not otherwise pertinent because the award is for a composite of two permanent injuries—one to the shoulder and the other to the neck—itself a non-scheduled loss and therefore properly expressed in terms of the body as a whole. Dauster v. Star Mfg. Co., Mo.App., 145 S.W.2d 499, 502 [3, 4].

■ As to the second point, appellants' contention that the award does not rest on competent and substantial evidence proceeds on the argument that in giving its award, the "Industrial Commission did not take into consideration all of the evidence but accepted only the employee's statements". By this, appellants mean that the Industrial Commission did not credit the evidence which tended to show that the employee suffered a shoulder injury only, such as the evidence that Haggard did not complain of his neck or back when examined by Dr. Haynie the day following the accident, Dr. Haynie's report as to his own and Dr. Pucci's findings, Dr. Chase's testimony that complaint and diagnosis was of injury to the shoulder only, as well as the records (all but illegible) of Dr. Post, the employee's own physician, showing treatments to the shoulder only. Appellants do not dispute, however, that Haggard gave evidence of complaint of injury to his neck, back, as well as his shoulder immediately following the accident to Dr. Haynie who treated those conditions, or that he complained of those conditions to Dr. Fee and Dr. Post as well, or that Dr. Fee found the employee had suffered permanently disability injuries to the shoulder and neck (as also determined by the Industrial Commission) but also to the back, or that Dr. Haynie—appellant's treating physician—although having confined his diagnosis of injury to the shoulder, found the employee to be disabled altogether from performing his work duties.

■ In short, the evidence was in sharp conflict both as to the nature of the injuries claimed and the extent of their permanency. In acquitting its fact-finding duty from evidence giving rise to disparate inferences, the Industrial Commission inevitably adopted some of the inferences and discarded others. Upon a review of the whole record it appears that the award is supported by competent and substantial evidence. Nor, contrary to appellants' contention, is it any less firmly supported because "(t)here was no testimony by any

doctor on the disability to the body as a whole nor does the referee's (sic) award show how he arrived at the award". Proof of the extent of disability is not required to be made with mathematical exactness, nor is the Industrial Commission bound by the percentage estimates or other testimony of medical experts. It was the duty and special province of the Commission to weigh all the evidence and reach its own conclusion as to the percentage of disability suffered. Franklin v. St. Louis Independent Packing Company, Mo.App., 360 S.W. 2d 350, 355 [4]; Hall v. Spot Martin, Inc., Mo., 304 S.W.2d 844, 854 [6, 8].

The judgment is affirmed.

All concur.

PRITCHARD, SWOFFORD and WASSERSTROM, JJ., not participating because not members of the court when cause was heard.