Ronald S. **BLAIR**, Plaintiff-Respondent,

v.

**ASSOCIATED WHOLESALE GROCERS, INC., and Allstate Insurance Company,** Defendants-Appellants.

No. 11252.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 24, 1980.

Raymond E. Whiteaker, Woolsey, Fisher, Whiteaker & Stenger, Springfield, for defendants-appellants.

Paul D. Rittershouse, Daniel, Clampett, Rittershouse, Dalton & Powell, Springfield, for plaintiff-respondent.

FLANIGAN, Chief Judge.

Ronald S. Blair filed a claim for compensation under the Missouri Workmen's Compensation Law, § 287.010–§ 287.800,[1] against his employer, Associated Wholesale Grocers, Inc., and its insurer, based on injuries arising out of an accident which occurred on May 31, 1974.

Among the facts agreed to by the parties were the following: On May 31, 1974, the employer was operating under the provisions of the compensation law with its liability insured by the insurer; on that date Blair was an employee of the employer, was working under the provisions of the law, and sustained an injury by accident arising out of and in the course of his employment; employer had notice of the injury; Blair's average weekly wage entitled him to the maximum benefits for temporary total disability and permanent partial disability; no compensation had been paid; the employer provided medical aid in the amount of $68.60 which was paid for on July 8, 1974; Blair incurred reasonable and necessary medical expenses in the amount of $3,004.13.

The referee found in favor of the employer and insurer and awarded no compensation. Blair appealed to the Labor and Industrial Relations Commission. The commission reversed the award of the referee and awarded Blair $1,970 for temporary total disability, $6,500 for permanent partial disability, and held that the employer and insurer were liable for the payment of Blair's medical expenses. On appeal to the circuit court by the employer and insurer, the award of the commission was affirmed. The employer and insurer appeal.

On this appeal this court must determine if the award of the commission, rather than that of the referee, is supported by competent and substantial evidence upon the whole record. All of the evidence and legitimate inferences arising therefrom must be viewed in the light most favorable to the award. This court may not substitute its judgment for that of the commission. The award may be set aside only if there is no substantial and competent evidence to support it or if the findings of the commission are clearly contrary to the overwhelming weight of the evidence. *Pulliam v. McDonnell Douglas Corp.,* 558 S.W.2d 693, 697[1–4] (Mo.App.1977). Conflicts in the evidence are for resolution by the commission. *Skinner v. Dawson Metal Products,* 575 S.W.2d 935, 938[2] (Mo.App.1978).

Appellants' first contention is that the claim is barred by the one-year limitation contained in § 287.430. In general that statute requires that a compensation claim be filed within one year after the injury (May 31, 1974) or within one year after the filing by the employer of the report of injury (July 8, 1974) "or in case payments have been made on account of the injury . . . , within one year from the date of the last payment."

Section 287.430 is a statute of repose and the statutory period is subject to being tolled by any payment made on account of the injury. *Skinner v. Dawson Metal Products,* supra, 575 S.W.2d at 941[12]. The furnishing of medical aid by the employer constitutes "payment" made on account of the injury, within the language of the statute, *Reichert v. Jerry Reece, Inc.,* 504 S.W.2d 182, 189[16] (Mo.App.1973); *Bryant v. Montgomery Ward & Company,* 416 S.W.2d 195, 197 (Mo.App. 1967); and, as *Bryant* points out, it is immaterial whether the treatment is furnished under compulsion of law or is voluntarily furnished after the expiration of the time over which the employer's statutory liability for medical treatment extends. If

1. All references to statutes are to RSMo 1969, V.A.M.S.

the employer or insurer has made itself legally liable for the medical aid, it is of no significance that the doctor or hospital has not received actual payment. *Cotton v. Voss Truck Lines, Inc.,* 392 S.W.2d 428, 430[2] (Mo.App.1965). Medical aid furnished by the employer after the one-year period provided by § 287.430 has elapsed revives the employee's right of action and a claim filed within one year after the date the aid was furnished is timely. *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119, 124 (Mo. banc 1965).

On the day of the accident Blair reported the matter to Charles Lawson, his foreman. Lawson made out an accident report and sent Blair to Dr. Lowe, the "company doctor," who treated him. On June 20, 1974, Dr. Lowe released Blair to go back to work and Blair did so. Blair received no additional medical treatment until September 1975.

The claim was filed on February 10, 1976. Rejecting the defense that the claim was barred by § 287.430, the commission found that the filing was timely for the reason that in September 1975 Lawson authorized Blair to obtain medical treatment and Blair did so that month.

Blair's evidence showed that in September 1975 Blair, while at work, informed Lawson that his back was still bothering him and that it had been bothering him since the date of the accident. Blair told Lawson that he needed to go back to Dr. Lowe and Lawson gave him permission to do so.[2] After examining Blair, Dr. Lowe informed him that his condition was "something out of his area" and referred Blair to Dr. VanHook. Dr. VanHook examined Blair and referred him to Dr. Whitlock. Blair received conservative treatment from Dr. Whitlock for several months and in February 1976 underwent an operation performed by Dr. Whitlock. Blair's return visit to Dr. Lowe, and his initial visits to the other two doctors, occurred in September 1975.

Appellants have never questioned, and do not question here, the authority of Lawson to send Blair back to Dr. Lowe in September 1975, nor do appellants question the authority of Dr. Lowe to refer Blair to Dr. VanHook, nor the authority of the latter to refer Blair to Dr. Whitlock.[3]

Appellants argue that Blair's testimony, concerning his conversation with Lawson in September 1975 authorizing Blair's return to Dr. Lowe, was not substantial enough to support the finding of the commission because it conflicted with testimony of Lawson on the issue of whether such a conversation took place and also conflicted with the testimony of the employer's record keeper, Kathy Craig. Mrs. Craig testified that her records contained no entry concerning Blair's conversation with Lawson and that there would have been such an entry if Lawson had reported that conversation to her.

As the commission noted, Lawson's testimony showed that he had "little independent recollection" of the matter. On cross-examination by claimant's counsel, Lawson admitted that his memory was vague; that his job as foreman involved "a big operation"; that he "talks with people 100 times a day about what is going on and what isn't going on." Lawson admitted that in October 1975 Blair told him he wanted to see a doctor. It is a reasonable inference that the failure of Mrs. Craig's records to reflect the conversation between Blair and Lawson

---

**2.** In *Cotton v. Voss Truck Lines, Inc.,* 392 S.W.2d 428, 433 (Mo.App.1965) the injured employee sought and obtained authorization from his supervisor to be treated by a certain doctor. The court of appeals agreed with the commission that the employee did not need to get permission of the employer to incur his own medical bills and the only inference to be drawn from the employer's authorization to see the doctor was that it was the employer's intention to be responsible for the doctor's bill.

**3.** It is unnecessary to decide whether the instant facts would have supported the presentation of such questions to the commission. The fact that they were not so presented precludes their assertion on this appeal. *Bryant v. Montgomery Ward & Company,* 416 S.W.2d 195, 200[9] (Mo.App.1967).

could be due to the fact that Lawson forgot to report the matter to Mrs. Craig rather than to the fact that no such conversation took place.

Appellants point out that the history contained in the report of Dr. VanHook makes no mention of the accident and argue that this fact casts doubt upon Blair's credibility with regard to the Blair-Lawson conversation in 1975. Appellants make substantially the same argument with respect to the initial history given by Blair to Dr. Whitlock. This argument is based upon a statement of Dr. Whitlock, during his trial testimony, that "the history was of a spontaneous back pain which had occurred over a month and a half before, with symptoms in his left lower extremity of approximately the same amount of time." That history was obtained on September 23, 1975. Whether or not that statement contained *all* of the history is not clear and one written report of Dr. Whitlock mentions the accident of May 31, 1974, and states that the information came from Blair.

Appellants place their principal reliance upon *Duncan v. A. P. Green Refractories Company,* 522 S.W.2d 639 (Mo.App.1975). In that case the employee claimed that he was accidentally injured at work on September 11, 1970, and that he reported the matter to his supervisor. No other evidence supported those assertions. The court of appeals held that the following constituted "an overwhelming mass of contrary evidence": the supervisor testified that the employee made no such report; although the employee was aware of a company rule requiring injured employees to file written reports, the employee did not file one; during the month following September 11 the employee saw "various physicians at least ten times" and made no mention of a September 11 accident; a chiropractor treated the employee for similar complaints for over eight months prior to September 11, and twice thereafter, and the employee made no mention of the accident; a post-accident hospital record made no mention of the accident; on insurance forms inquiring whether the employee's injuries arose from a work-related accident, the employee answered "no," and signed the forms; the employee collected $1,000 under a group insurance policy on the representation that his disability was not due to a work-related accident; 40 days after the accident the employee requested a surgeon to change the history as the employee had previously related it, and the suggested change was to the effect that the accident occurred on August 31.

An evidentiary imbalance of the degree which existed in *Duncan* is not present here. This court holds that the finding of the commission that the claim was timely filed is supported by substantial and competent evidence and is not clearly contrary to the overwhelming weight of the evidence.

Appellants' first contention has no merit.

■ Appellants' second contention is that the record is insufficient to support the finding of the commission that there was a causal connection between the accident and Blair's "surgery in 1976 and the resulting disability" for the reason that the opinions of two doctors showing that causal connection were based upon hypothetical facts not supported by the record.

This contention relates to the testimony of Edward Prostic, M.D., and Courtney Whitlock, M.D. Each doctor testified by deposition and the two depositions were admitted into evidence at the hearing before the referee.

When the deposition of Dr. Prostic was taken, Blair's counsel propounded a lengthy hypothetical question to the witness. Counsel for appellants objected to the question on the ground that "it asks that you base an opinion and form a conclusion on facts not in evidence and omits other facts that will be in evidence." At the hearing the deposition of Dr. Prostic was offered by Blair and admitted into evidence "subject to the objections contained therein." Appellants' counsel made no additional objection at that time.

■ When an objection is made to a hypothetical question on the ground that it assumes facts not in evidence or omits facts

shown in evidence, counsel so objecting must point out what matters not in evidence are assumed in the question or what matters in evidence are omitted from the question. If the objection lacks this specificity, which is the situation here, it is insufficient to present and preserve error. *Denney v. Spot Martin, Inc.,* 328 S.W.2d 399, 402[2] (Mo.App.1959). See also *Cole v. Evans,* 546 S.W.2d 748, 750[1] (Mo.App. 1977); *Glowczwski v. Foster,* 359 S.W.2d 406, 411 (Mo.App.1962).

The deposition of Dr. Whitlock was offered by appellants and admitted into evidence "subject to any objections contained therein." At the time the deposition was taken, a lengthy hypothetical question was propounded to the witness during cross-examination by Blair's counsel. Counsel for appellants made no objection to the question at the time it was asked and made no objection when the deposition was offered into evidence.

■ Where evidence is admitted without objection and without motion to strike, its admissibility may not be questioned on appeal. *Vickery v. ACF Industries, Incorporated,* 454 S.W.2d 620, 623[5] (Mo.App.1970); *Garrison v. Campbell "66" Express,* 297 S.W.2d 22, 28[4] (Mo.App.1956).

Appellants' second contention has no merit.

■ Appellants' third contention is that the record is insufficient to support the finding of the commission that Blair sustained permanent partial disability amounting to 25 percent of the body as a whole which is equivalent to a cash award of $6,500.

Blair's evidence touching the issue of the extent of permanent partial disability consisted of the testimony of Dr. Prostic and Blair himself. Appellants' evidence on the same issue consisted of the testimony of Dr. Whitlock. Both doctors had examined Blair in light of his complaints and Whitlock was the treating physician.

The opinion of Dr. Prostic was that Blair's permanent partial disability amounted to 22½ percent of the body as a whole.

Dr. Whitlock's opinion was that Blair's permanent partial disability amounted to 10 percent of the body as a whole.

At the hearing before the referee, Blair testified, with regard to his residual complaints, as follows: "My left leg is doing a lot better and so is my back. Now and then I might get a pain in the left leg just from lifting or something. I can't do sports like I used to. I can't play tennis. I tried to water ski this summer and I really can't do it too well. Other than that I am doing pretty good. I am working. My back is much better. It bothers me a little bit. It gets sore but it is a lot better than it was before I was operated on. The way I work it does limit my work. Like filling an order I will go at it a certain way and do some lifting where otherwise I would just bend over and try to use my legs, but as far as slowing me down, I don't think it has."

Although the referee awarded no compensation, he expressed the opinion, in his award, that Blair sustained permanent partial disability to the body as a whole in the amount of 10 percent.

■ Determination of the percentage of disability is a finding of fact within the special province of the commission. *Fogelsong v. Banquet Foods Corporation,* 526 S.W.2d 886, 892[10, 11] (Mo.App.1975); *McAdams v. Seven-Up Bottling Works,* 429 S.W.2d 284, 289[9] (Mo.App.1968). Proof of the extent of disability is not required to be made with mathematical exactness and the commission is not bound by the percentage estimates or other testimony of medical experts. *Haggard v. Synder Const. Co.,* 479 S.W.2d 142, 145 (Mo.App.1972); *Hall v. Spot Martin,* 304 S.W.2d 844, 854 (Mo.1957). The commission may consider all the evidence, including the testimony of the employee, and draw all reasonable inferences in arriving at the percentage of disability. *Fogelsong,* supra, at 892. Appellate courts have affirmed disability ratings made by the commission which exceeded the highest of the percentages expressed in medical opinions. See, for example, *McAdams,* supra, and *Murphy v. W. J. Lynch Co.,* Mo. App., 57 S.W.2d 685 (1933).

This court holds that under the foregoing evidence the permanent partial disability rating of 25 percent of the body as a whole ($6,500) made by the commission is not supported by substantial and competent evidence and that said rating should be reduced to 22.5 percent ($5,850). As so modified, the award of the commission should be affirmed.

The judgment affirming the award is reversed and the cause is remanded to the circuit court with directions to remand the cause to the Industrial Commission for further proceedings consistent with this opinion.

TITUS, P. J., and GREENE and PREWITT, JJ., concur.