Jessie Irene **BRADSHAW,**
**Plaintiff-Respondent,**

v.

**BROWN SHOE COMPANY,**
**Defendant-Appellant.**

No. 12976.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 13, 1983.

Motion for Rehearing Overruled and
to Transfer to Supreme Court Denied
Nov. 10, 1983.

---

See also *State v. Carter,* 475 S.W.2d 85 (Mo. 1972); *State v. Reed,* 447 S.W.2d 533 (Mo. 1969); *State v. Burr,* 542 S.W.2d 527 (Mo.App. 1976).

**392**

Warren S. Stafford, Taylor, Stafford & Woody, Springfield, for plaintiff-respondent.

Raymond E. Whiteaker, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for defendant-appellant.

PREWITT, Judge.

Plaintiff sought benefits under the Workmen's (now Workers') Compensation Law, Chapter 287, RSMo 1978. She contended that she was injured in a fall while working for defendant. She sought benefits for permanent partial disability to her right knee and past and future medical expenses. Following a hearing an administrative law judge entered an award in favor of claimant based upon 15% permanent partial disability to her right leg at the knee. Plaintiff appealed and the Labor and Industrial Relations Commission found that the disability to her right leg at the knee was 75%; that future medical treatment would be required by her as a result of the accident; and allowed her an indefinite amount of future medical expenses. Defendant appealed to the Circuit Court of Texas County, Missouri, the county where plaintiff was injured. The circuit court affirmed the award of the Commission.

Defendant appeals, contending that the Commission's findings were not supported by competent and substantial evidence and were against the overwhelming weight of the evidence in three particulars: (1) in finding that respondent sustained permanent partial disability to her right leg at the knee of 75%; (2) in allowing an indefinite amount for future medical expenses; and (3) in finding that plaintiff's disability to her knee was caused by the accident she had at work.

▪ The scope of our review is limited by Mo. Const. Art. V, § 18 and § 287.490, RSMo 1978 (repealed and replaced by § 287.490, RSMo Supp. 1982). Our review is of the Commission's award and only when that award is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence do we disturb it. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 579 (Mo.App.1983). The findings of the Administrative Law Judge are not binding upon the Commission. It reaches its own conclusions independent of the judge's findings. *Id.* The Commission is the judge of the credibility of witnesses and we do not substitute our view of the facts for those found by the Commission if the Commission's findings are supported by sufficient competent evidence. *Id.* 648 S.W.2d at 580. In considering whether the Commission could reasonably have made its findings, an appellate court must view the evidence in the light most favorable to the award and the prevailing party. *McAdams v. Seven-Up Bottling Works*, 429 S.W.2d 284, 287–288 (Mo.App.1968).

Defendant contends that the award based on 75% permanent partial disability of plaintiff's right leg at the knee was not supported by competent evidence and was against the overwhelming weight of the evidence because plaintiff's three treating physicians and defendant's examining physician stated that at most she was entitled to a disability rating of 20%; that her injury was not incapacitating; and the medical evidence showed that defendant could be employed in a sedentary occupation.

▪ Percentage of disability is a finding of fact for the Commission, it is not bound by the percentage estimates of medical experts, and considers all the evidence in arri-

ving at the percentage. *Malcom v. La-Z-Boy Midwest Chair Company,* 618 S.W.2d 725, 728 (Mo.App.1981); *Blair v. Associated Wholesale Grocers, Inc.,* 593 S.W.2d 650, 655 (Mo.App.1980). When the Commission believes that the ratings of the physicians are too conservative it has the power to increase the rating by an appropriate amount. *Wiedower v. ACF Industries, Incorporated,* 657 S.W.2d 71 (Mo.App.1983).

We summarize the evidence that was favorable to plaintiff. Plaintiff was 49 years of age at the time of the hearing. She had never had any problem with her knee or leg prior to the fall. The physicians diagnosed her problem as chonodromalacia of the right kneecap. That is a "roughening or cracking of the smooth cartilage that is on the under surface of the kneecap, that part of the knee which rubs across the joint when you move your knee." Chonodromalacia manifests itself "[p]rimarily by pain and on examination by feeling a roughness of the patella when you move it around." Plaintiff had an operation "which consisted of smoothing the under surface of the kneecap down". The operation was also described as a shaving of the right patella and an alignment or realignment of the quadriceps tendon.

After surgery was performed her knee was better for awhile, but gradually became worse. She has to wear a leg brace and orthopedic shoes. She wears orthopedic shoes all the time, except when she is in her home and not going to be on her feet. She has almost constant pain from the knee. Going up or down stairs makes the pain worse. The pain is "just like a toothache hurting only it's in my knee and it runs on down into my foot and up into my hip." She cannot stand cold such as being in an air-conditioned car or in a food store where they have open freezers because it causes severe pain. She cannot sit very long at a time because her knee starts bothering her. She cannot use her right leg to raise herself up, such as out of a chair, and cannot squat down. She said that her knee "will give away on me and go out from under me if I don't have my immobilizer or my hinge brace on". Her knee swells and the pain is getting worse. She takes two Naproxin a day, one Valium at night, and 8 to 16 "arthritis aspirin" a day. Naproxin is an anti-inflammatory drug.

Her husband testified that prior to the injury she did not have any problems with her knees or legs and she helped him out on the farm, such as driving the tractor and loading wood. He said that now she "can't hardly get around and do her work around the house", and that she has trouble in getting up steps. He said she cannot drive a vehicle very long at a time because her leg bothers her and he now has to do all the driving on trips, although he "ain't too good a driver"; that she doesn't drive except just around town; that she wears her brace all the time; and she cannot squat down or wear high heel shoes.

Her physicians agreed that the pain prevents her from being on her feet for any extended period and limits her employment to only sedentary occupations. One testified that "[s]quatting down, getting up, anything that causes pressure of the patella against the knee hurts" and that her condition will get "worse with time." She also has limitation of motion. She has from zero to ninety degrees in flexion compared to normal of about zero to one-hundred twenty degrees.

Obviously, one of the major benefits of a leg is in standing, walking, and getting up and down. Because of the disability to plaintiff's knee, as described by her, her husband, and her physicians, her leg nowhere near performs the desired function. Her walking is limited and impaired. She cannot stand on her leg for any length of time and has to use her other leg to get up or down. Giving the deference that we must to the Commission's findings, we cannot say that its determination that a 75% functional impairment of the right leg at the knee level was not supported by competent and substantial evidence. Compare *McAdams v. Seven-Up Bottling Works,* supra, 429 S.W.2d 284.

Defendant asserts in its second point that the Commission improperly made an indefi-

nite award for future medical expenses because none of the physicians testified to any particular surgical procedures or therapy which plaintiff would require in the future and their testimony was that any future medical care would depend upon plaintiff's subjective complaints of pain.

In its brief defendant asks us to "look behind" the testimony of plaintiff's physicians that she would need future medical care, contending that if we examine their testimony as a whole, "their conclusions and the Commission's finding will be seen to be based upon surmise, speculation and conjecture." Defendant asserts that "the identification of that treatment and the necessity for any particular treatment other than simple medications was never established on the record." We do not think that the Act requires that there be evidence of the specific medical treatment or procedures that will be necessary in the future as that may put an impossible and unrealistic burden upon the employee. In interpreting the Workmen's Compensation Law, we resolve all doubts in favor of the employee. *Kowalski v. M–G Metals and Sales, Inc.,* 631 S.W.2d 919, 923 (Mo.App. 1982). Resolving the doubts in favor of the employee here, we deny this point.

Defendant's third point is that the Commission erred in finding that plaintiff's disability was caused by the accident because none of the physicians who testified had treated plaintiff immediately following her injury and the testimony did not link her condition to the accident with reasonable medical certainty.

One of the physicians testified in response to a hypothetical question asking for his opinion "based on a reasonable medical certainty", that if she had no problem with her knee prior to the accident, he "would have to assume that this was the cause of her chondromalacia." There was evidence from plaintiff and her husband that she had no problem with her knee before the fall. Defendant contends that this testimony was insufficient because the physician assumed that the accident caused her problems and did not testify that it did

with reasonable medical certainty. We read his testimony as indicating that he was using "assume" to mean that he could infer from the facts hypothesized, based upon reasonable medical certainty, that claimant's knee problems were a result of her fall. In legal, as well as common parlance, "inference", "probability", "assumption", and "presumption" can have substantially the same meaning and import. *Barr v. Vickers, Inc.,* supra, 648 S.W.2d at 583. In *Barr,* we found that a physician's use of "assume" in response to a hypothetical question did not prevent his opinion from being based upon the facts hypothesized. This point is denied.

The judgment is affirmed.

HOGAN and FLANIGAN, JJ., concur.

MAUS, P.J., not sitting.