241 S.W.2d 31 (1951)
DIEBOLD
v.
GREAT ATLANTIC & PACIFIC TEA CO.
No. 21589.
Kansas City Court of Appeals. Missouri.
June 4, 1951.
*32 Fred Bellemere and Fred Bellemere, Jr., Kansas City, for appellant.
Otto Schmid, Kansas City, for respondent.
BROADDUS, Presiding Judge.
This is an action for Workmen's Compensation. On April 28, 1949, employee, John B. Diebold, filed with the Division of Workmen's Compensation a claim against his employer, the Great Atlantic & Pacific Tea Company. In this claim Diebold alleged that while working in employer's store at 3736 Broadway, Kansas City, Missouri, he sustained an injury to his left groin while reaching across some boxes in a meat cooler to lift a beef loin weighing approximately fifty pounds. Employer filed its answer denying the alleged accident and injury. A hearing was had before the Referee. As a result of that hearing, the Referee found that on March 10, 1949, employee sustained an accident arising out of and in the course of his employment, resulting in bilateral inguinal hernias, and that said employee was in need of medical, surgical and hospital treatment to cure and relieve him from the effects of his injuries, and that employer was liable for the same.
Employer applied for a review of the Referee's award by the Industrial Commission of Missouri. A review was granted. On May 1, 1950, the Commission made a final award reversing the Referee and finding from all the evidence that employee, John B. Diebold, failed to prove that his condition was either caused or aggravated by an accident arising out of and in the course of his employment and, therefore, denied the payment of any compensation. From this finding of the Commission denying him compensation employee-Diebold appealed to the Circuit Court of Jackson County. On August 25, 1950, that court entered an order reversing the final award of the Industrial Commission and directing that compensation be paid and medical, surgical and hospital treatment be furnished Diebold by his employer. Employer has perfected its appeal to this court.
Respondent-employee testified that on March 10, 1949, he was working for appellant-employer at its store at 3736 Broadway, Kansas City, Missouri, as a meat cutter and counter man. A supply of meat, in large pieces, was kept in a walk-in cooler, 10x14 feet in size. Respondent went into the cooler to get a beef loin. This particular loin was hanging on a hook against the wall, about four feet above the floor. Some boxes on the floor below the beef extended out from the wall a distance of about three feet. Respondent reached across the boxes to pull the loin off the hook. It did not come off at the first pull, so he gave it "a jerk to jerk it off the hook, and just as I did that my foot slipped and I felt that pain in my side." The meat dropped on the box and respondent had to sit down and rest for some time. He was able to continue with his work for the rest of the day, but was very weak. He made no report of the accident and injury. He did say, however, that he told Marvin Kessler, a fellow-employee, "of that sudden pain I had in the left side." Respondent continued to work for appellant until March *33 28, 1949, but stated he did not lift any heavy pieces of meat.
Respondent was a part time employee. Appellant had a rule that, before an employee could work full time, he was required to take and pass a physical examination. On March 21, 1949, in accordance with instructions of his foreman, Glen Travis, respondent reported to appellant's physician, Dr. Prentiss, for a physical examination in preparation to being employed at full time. That examination disclosed that respondent had a double hernia. His employment with appellant was terminated on March 28, 1949 for failure to pass the physical examination.
On August 30, 1948, respondent was examined by Dr. J. A. Nigro at the request of the Kroger Grocery and Baking Company. Dr. Nigro testified that at that time respondent had no hernia of any kind and was "suitable for any class of work." He also stated that, generally, it is not possible to tell the age of a hernia.
Glen C. Travis was called as a witness by appellant and testified that he was then employed by Milgram's store at 32nd & Troost. In March 1949, he was in the employ of appellant at its market at 3736 Broadway; that respondent was not a full time employee of appellant, in that he worked 39 hours a week, instead of 48. Travis testified that respondent did not complain to him that he (respondent) had hurt himself while working in the meat cooler. As store manager, Travis sent respondent to Dr. Prentiss to be examined. After Dr. Prentiss had made the examination appellant delivered to Travis the following notice: "You have a part time meat cutter, John Diebold, who has failed to pass his physical examination. Will you please see that his services are terminated." Travis testified that on April 28, 1949, he handed this note to respondent and said to him, "Well, John, I guess this is it. You didn't pass the physical examination." And respondent replied, "Well, I have been afraid to take a physical. I was turned down for hernias before I started to work here."
Marvin H. Kessler testified on behalf of appellant and said that he was a fellowworker with respondent in March 1949, and that respondent never said anything to him about having been injured in the meat cooler; that before respondent went to see Dr. Prentiss he stated to Kessler that he (respondent) "dreaded to go down because he didn't think he would pass the qualifications of Dr. Prentiss. He (respondent) said he had a hernia, a slight hernia, before he ever started to work for A. & P."
Was the Circuit Court justified in setting aside the award of the Industrial Commission? This is the sole question before us.
The law is now well settled that the reviewing court may not substitute its own judgment on the evidence for that of the Commission; but the court is authorized to decide whether the Commission could have reasonably made its findings and reached its result, upon consideration of all of the evidence before it; and to set aside decisions only when they are clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W. 2d 55.
And our Supreme Court has recently said that: "Undeniably the Commission passes upon the credibility of the witnesses and may decide a claim solely upon the finding of lack of credibility of uncontradicted and unimpeached testimony offered in support of a claim." Smith v. Smith, Mo.Sup., 237 S.W.2d 84, 89.
In the case at bar respondent's testimony was the only evidence as to the accident and while, therefore, there is no direct evidence which disproves the accident and injury, respondent followed a course of conduct so inconsistent with its occurrence that reasonable men might differ as to its actual happening. There is no question but that respondent had the hernias. The dispute is whether or not they were received within the course of his employment *34 by appellant. We are here confronted with the situation of an experienced employee working under the provisions of the Workmen's Compensation Act sustaining an alleged accident and, knowing that he was protected by that Act, failing to report the accident on the theory that he did not think it was anything serious. He did not think it was anything serious in spite of the fact that by his own testimony he was in such pain that he had to stay in the cooler for such a long period of time that someone was sent to find him; that he went home sick the night of the alleged occurrence; that he was not able to do any more heavy lifting and could have had the pain complained of every five minutes if he did not watch himself. The transcript is full of testimony by respondent as to pain, watching himself carefully, not lifting anything heavy and yet not reporting the accident to his foreman because he did not think it was anything serious.
At the time of the hearing before the Referee, Travis, the foreman, had been discharged by appellant and was employed by another grocery concern. Travis stated that respondent never told him about having had an accident while in the meat cooler; that when handed the discharge notice, respondent said he had been afraid to take a physical examination because he had been turned down on account of hernias before he started to work for appellant.
Kessler denied that respondent told him anything about having had an accident, but that respondent said he had a hernia before he ever started to work for appellant.
From the above, it is apparent that the evidence was conflicting. Respondent, in his brief, in effect, concedes this, but, he argues, the Referee was the only trier of the facts who could pass on the credibility of the witnesses because he alone saw and heard them. That, therefore, the award of the Referee and not that of the Commission should be upheld. The answer to this contention is found in the recent case of Douglas v. St. Joseph Lead Co., Mo.App., 231 S.W. 2d 258. At page 261 the court uses this language:
"Employer argues that the credibility of the witnesses is a matter to be passed on solely by the Referee before whom they appeared and testified. We are of the opinion that employer's contentions cannot be sustained upon any reasonable view of the statutes governing Workmen's Compensation claims.
"If we were to hold that the findings of a Referee must be deferred to, it would be equivalent to holding that the Referee is the supreme authority and that his findings are binding upon the Commission and on the Circuit Court as well as upon this court merely because the witnesses in such a case as this appear before the Referee but do not appear before said reviewing tribunals. A mere reading of the statutes governing Workmen's Compensation shows that the duties and scope of authority of Referees are positively defined and clearly limited. They are merely the servants and agents of the Commission. To adopt employer's view would make referees the masters of and superior to the Commission. Neither the statutes nor the decisions of our courts warrant such a view."
Certainly it cannot be said that the award of the Industrial Commission is "clearly contrary to the overwhelming weight of the evidence." This being so, under the holding of the leading Wood case, supra, the Circuit Court should not have substituted its own judgment on the evidence for that of the Commission.
The judgment of the Circuit Court should be reversed and the cause remanded with directions to that court to enter a judgment affirming the findings and award of the Industrial Commission. It is so ordered.
All concur.