Edna DUPREE, Plaintiff-Appellant,

v.

YORKSHIRE CLEANERS, INC., and Hartford Accident and Indemnity Company, Defendants-Respondents.

No. 33615.

St. Louis Court of Appeals, Missouri.

April 28, 1970.

Gene R. Spengel, Jr., Max M. Librach, St. Louis, for plaintiff-appellant.

Edmund J. Barker, St. Louis, for defendants-respondents.

DOWD, Judge.

This is an appeal by an employee from a judgment of the Circuit Court of St. Louis County affirming an award of the Industrial Commission denying compensation. The Industrial Commission had reversed an award and finding made by the referee in favor of the employee for $6,350.

In its final award denying compensation and reversing the award of the referee, the Industrial Commission stated: "We find and believe from the competent and substantial evidence upon the whole record that employee did not file a claim for compensation with the Division of Workmen's Compensation within the time provided by Section 287.430 R.S.Mo., 1959 [V.A.M.S.], and her claim is therefore barred by limitation of action."

█ The issue for determination in this appeal is whether the employee's claim is barred by the statute of limitations (Section 287.430, RSMo 1959, V.A.M.S. as amended by Laws of 1965), which provides that no proceeding for compensation shall be maintained unless a claim therefor is filed within one year after the injury, or in case payments have been made on account of the injury, within one year from the date of the last payment. However, payment made on account of the injury in the form of medical aid furnished by the employer after the one year period of limitation provided by § 287.430 has elapsed, revives the employee's claim and right of action and a claim filed within one year thereafter would be timely. Welborn v. Southern Equipment Co., Mo., 395 S.W.2d 119 [5].

The employee contends here that the employer furnished the employee medical aid after the one year period of limitation had elapsed and the claim was thereby revived and therefore the claim is not barred by § 287.430. Employee specifically contends that it was her visit to Doctor Nofles on April 15, 1965 which revived her claim.

Employee's claim was filed April 28, 1965 in which she alleged the accident took place in April of 1963. The employee while

working as a coat presser in April of 1963 was attempting to put a sleever (sleeve stretcher) in the sleeve of a man's coat before pressing it. The spring of the sleever broke and the wooden part sprang up and hit her in the right eye. The eye hurt and she grabbed her eye and hollered. Dave Barnett, the plant manager, was standing nearby and the employee told him what had occurred. She stated to Barnett:

"A  I told him it broke and hit me in the eye; he could see it was damaged, and he looked at the sleever and talked to me, and I said I need to go to a doctor; he said to go to a doctor, but I can't send you to a company doctor because if I do I'll lose my insurance and too many people are getting hurt lately and you'll be laid up; so I said I'll have to go to a doctor, so I worked the rest of the evening by going back and forth putting packs on my eye."

Employee testified that Barnett did not tell her which doctor to see and that he did not know any eye doctor. She also testified Barnett said he would take care of the doctor's bill. The following day, (a Saturday) the employee told Barnett she was going to a doctor that afternoon. Barnett told her to let him know what the doctor said. That afternoon the employee went to Doctor Nofles' office but she did not see him because he was not in his office. She then treated herself by using cold packs and salt water on her eye. When she noticed her eye starting to cross she went to see Doctor Kayes on March 9, 1964 which was about eleven months after the accident and about thirteen months before filing her claim. About a month or two before this examination she noticed she was having difficulty seeing with her right eye. Doctor Kayes gave her a prescription for glasses. She did not get a bill to bring back to Barnett. However, the main reason that she went to Doctor Kayes was to have her eyes examined for the purpose of getting a driver's license. The day after she saw Doctor Kayes she had the following conversation with Barnett:

"Q * * * Did you have any conversation with Dave Barnett in regard to seeing another doctor after you saw Dr. Kayes?

"A  Yes, but after I seen Dr. Kayes, I told him—I talked to him and I told him I want another doctor's diagnosis, and I was going to try to get an appointment and see Dr. Nofles.

"Q  Did Dave Barnett make a reply to your statement?

"A  He said, yes, when you see Dr. Nofles let me know what he said.

"Q  Was there any conversation about who was going to pay for this examination or appointment?

"A  The second time he didn't say. The first time I thought—I mean I thought he told me the first time when I first got hurt that he would take care of it when I go to a doctor."

The second time she went to a doctor was on April 15, 1965 when she went to see Doctor Nofles who also gave her a prescription for glasses. Doctor Nofles sent the employee a bill but she did not give the bill to Barnett. She went to see Dr. Nofles on her own. She testified: "* * * Dr. Nofles was on my—the second one; Dr. Nofles was on my going in, because I was willing to pay for that."

The day after she saw Dr. Nofles she told Barnett the following:

"A  No, I went to Dr. Nofles—I told him before I went to Dr. Nofles, and the next day after I went to Dr. Nofles I come back and told him Dr. Nofles' diagnosis, and I told him the diagnosis, and he haven't say anything about taking care of the bill for Dr. Kayes, so I said you send a claim for Workmen's Compensation for me, that day I been to Dr. Nofles and his diagnosis was the same as Dr. Kayes's and he said he would take care of it."

Prior to April of 1963 the employee was not having any trouble with her right eye

nor had she ever previously injured that eye. She did have trouble seeing for distances as a child.

Mildred Thompson, another employee, testified that she did not actually see the sleever hit the employee in her eye but saw her holding her hand over her eye. Mrs. Thompson heard the employee ask Barnett if she could go to a doctor and that Barnett told her to do so and send him the bill and he would pay the bill. The employer and insurer did not call any witness.

█ The rules of law governing the extent and scope of our review in a Workmen's Compensation case are well established. It is our duty to determine whether upon the entire record, the Industrial Commission could have made the finding and award it did make. We cannot substitute our judgment on the evidence for that of the commission. We must affirm the award if it is supported by competent and substantial evidence upon the whole record. In our review, we may set aside the finding and award of the commission only if they are clearly contrary to the overwhelming weight of the evidence. All the evidence and the reasonable inferences deducible therefrom, must be viewed in the light most favorable to the finding and award. We must disregard all opposing and unfavorable evidence to the award and this is true even though the finding of the commission, if to the contrary, would also have been supported by the evidence. The weight of the evidence and the credibility of the witnesses are for the commission only. If the competent evidence or permissible inferences are conflicting the choice rests with the commission and it is conclusive with this court. Where the finding of the ultimate facts must be made by a process of natural reasoning from the facts alone, we may not disturb the commission's finding. Williams v. S. N. Long Warehouse Co., Mo.App., 426 S.W.2d 725, 733.

It is the employee's visit to Doctor Nofles on April 15, 1965 which will control the determination of whether the employer au-

thorized medical treatment. Did the employer through the actions of Barnett furnish medical services to the employee so as to constitute payment so as to revive the employee's claim and right of action?

█ Applying the rules governing our review, we believe the award of the commission is supported by substantial and competent evidence and should be affirmed. Here the evidence shows that Barnett did authorize the claimant to be treated by a doctor in April of 1963 and agreed to pay the bill. However, when Doctor Nofles was not in his office the day following the accident, the employee did not see a doctor until about eleven months later when she was examined by Doctor Kayes on March 9, 1964. Before Doctor Kayes' examination she noticed her eyes starting to cross and was having difficulty seeing with her right eye. Doctor Kayes examined her eyes and gave her a prescription for glasses. However, the main reason she went to see Doctor Kayes was to have her eyes examined for her driver's license. It is true that on March 10, 1964 Barnett did tell the employee to let him know what Doctor Nofles said when she told him she was going to see Doctor Nofles. However, the employee then waited until April 15, 1965 which is more than thirteen months after the conversation before seeing Doctor Nofles.

We do not believe that the employee's visit to Doctor Nofles on April 15, 1965 can be said to constitute "medical aid furnished by the employer". The employer did not authorize this visit nor did he offer or agree to pay Doctor Nofles' bill. She saw Doctor Nofles on her own on April 15, 1965 and she was willing to pay for that visit.

█ The employer's authorization to see a doctor in April of 1963 could not be extended indefinitely to include her visit to Doctor Nofles on her own on April 15, 1965 which is approximately two years after the accident. The plain purpose of § 287.430 is to prevent claims from lying

unfiled indefinitely and becoming stale. Morgan v. Krey Packing Co., Mo.App., 403 S.W.2d 668 [3]; Wheeler v. Missouri Pac. R. Co., 328 Mo. 888, 42 S.W.2d 579, l. c. 581. We do not believe that the commission's finding that the claim is barred by § 287.430 is clearly contrary to the overwhelming weight of the evidence. We therefore must affirm.

The judgment of the circuit court sustaining the finding and award of the Industrial Commission is affirmed.

WOLFE, P. J., and BRADY, J., concur.