Fred R. FARIES, Employee-Respondent,

v.

ACF INDUSTRIES, INCORPORATED, a corporation, Employer-Appellant.

No. 36644.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 9, 1975.

Gentry, Bryant & Hereford, Herbert E. Bryant, Stephen M. Hereford, St. Louis, for employer-appellant.

Mogab, Hughes & Green, Inc., Charles A. Mogab, Richard L. Hughes, St. Louis, for employee-respondent.

McMILLIAN, Judge.

Employer, ACF Industries, Inc., (ACF, Inc.) appeals from a judgment of the Circuit Court of the City of St. Louis, affirming the decision and award of the Industrial Commission of Missouri, Chapter 287, RSMo 1969.[1]

On 4 June 1971, respondent, Fred R. Faries, sustained an injury by accident, arising out of and in the course of his employment with ACF, Inc. On 6 September 1972, Faries filed a claim for compensation with the Division of Workmen's Compensation, however, the referee denied compensation on the ground that recovery was barred by the one-year statute of limitation, § 287.430.

On appeal to the Commission, the decision of the referee was reversed. The Commission found, one member dissenting, that the statute of limitation had been tolled by a 17 August 1972 visit to the company doctor and that Faries suffered a 20% permanent partial disability of the left foot at the ankle. Based upon its findings, the Commission awarded Faries $1968.50 less a credit of $54.12 for compensation previously paid.

From the transcript these facts are evident: On 4 June 1971, Faries, while working on an upside down flat car and attempting to swing a hoist, stepped on a metal pin about 2½″ in diameter. The pin rolled causing Faries to fall and injure his left

---

1. All statutory references are to RSMo 1969 unless otherwise indicated.

foot and left leg. He was taken to Lutheran Hospital for x-rays and then returned to the office of Dr. Robert E. Thomasson, the company physician. Dr. Thomasson wrapped the ankle, gave Faries pain medication and crutches, and advised him to use warm soaks. Faries returned to Dr. Thomasson's office on 8 June and 10 June 1971. On 10 June 1971, the doctor advised Faries to return to work on 14 June 1971. The doctor's record indicates that Faries also came for treatment on 15 June and 25 June 1971, but on each of these dates after waiting for a period of time left the office without seeing him.

Then on 17 August 1972, Faries returned to Dr. Thomasson's office. The employee testified that during this visit he was advised by Dr. Thomasson to again use warm soaks for his ankle. Dr. Thomasson unequivocally maintained in his testimony that he neither prescribed medication for Faries on 17 August 1972 nor advised Faries to continue warm soaks. On cross-examination, the doctor admitted, however, that warm soaks would not be an unreasonable treatment if a problem with the ankle persisted. The clinic record entry for this 17 August 1972 visit reads simply:

> "There is normal contour and shape of left ankle. Motion of the ankle joint is normal and the employee says there is no pain. There is no partial permanent disability of the left ankle."

Faries maintains that he still has trouble with this ankle. He testified that he cannot stand on his toes on his left foot, that he has to wear support socks and has trouble wearing low cut shoes, and that if he is on his feet for any length of time or does any lifting, the ankle swells.

In February, 1973, at the request of the employee's attorney, Dr. Jerome F. Levy examined Faries. Dr. Levy found that there was a normal range of motion of the ankle but there was a weakness of 50% in dorsiflexion and plantaflexion of the left ankle. The doctor also testified that an injury such as Faries experienced could exhibit varying levels of tenderness, swelling and weakness from day to day. Dr. Levy rated the disability to Faries' ankle as a 20% permanent partial disability.

██ ACF, Inc., raises three contentions: (1) the overwhelming weight of the evidence on the record demonstrates, as a matter of fact, that the employee-respondent was not advised to soak his ankle on the 17 August 1972 office visit; (2) even if such advice was given it did not constitute medical treatment so as to toll the statute of limitation; and (3) even if the referee's finding as to the statute of limitation was erroneous, the Commission was without jurisdiction to award disability compensation when the referee had denied all compensation.

We are unable to adopt the ACF, Inc.'s argument at any stage of its logical progression. Consequently, we affirm the judgment of the Circuit Court.

Section 287.430 provides, in part, that:

> "No proceedings for compensation under this chapter shall be maintained unless a claim therefor be filed with the commission within one year after the injury or death, or in case payments have been made on account of the injury or death, within one year from the date of the last payment. . . . ."

In the present case, the injury occurred on 4 June 1971—the claim was not filed until 6 September 1972. Faries' contention, however, is that the 17 August 1972 examination and the advice to continue warm soaks constituted "medical treatment" amounting to "payments" under the statute. It is well-established in Missouri that "medical treatments" are payments under this section and have the effect of tolling the statute of limitation. *Morgan v. Krey Packing Co.*, 403 S.W.2d 668 (Mo.App.1966) and *Reichert v. Jerry Reece, Inc.*, 504 S.W.2d 182, 189 (Mo.App.1973). The treatment need not be within one year of the injury because the rendering of the treatment is deemed to revive the remedy, *Welborn v. Southern Equipment Co.*, 395 S.W.2d 119,

124 (Mo.Banc 1965); *Silas v. ACF, Industries, Inc.*, 440 S.W.2d 189, 193 (Mo.App. 1969) and *Dupree v. Yorkshire Cleaners, Inc.*, 454 S.W.2d 607, 608 (Mo.App.1970). Therefore, if the employee was advised on 17 August 1972 to take warm soaks for the ankle injury and if such advice constitutes "medical treatment," the employee's action is not barred.

■ ACF, Inc., first mounts a challenge to the factual determination of the Commission that Faries was advised on 17 August 1972 to take warm soaks. As to determinations of fact, our appellate review is fairly limited, see § 287.490. Factual determinations are only to be reversed if clearly contrary to the overwhelming weight of the evidence, *Deatherage v. Churchill Truck Lines, Inc.*, 469 S.W.2d 660, 661 (Mo.App. 1971).[2] The reviewing court is to apply all favorable inferences in support of the award of the Commission, *Saale v. Alton Brick Co.*, 508 S.W.2d 243 (Mo.App.1974).[3] Applying this standard of review to the present case, we are unable to hold that the factual determination is unsupportable. The weight of the evidence suggested by the ACF, Inc., as militating against the Commission's factual finding consists of the denial by Dr. Thomasson that he gave such advice, the clinic record's lack of an entry reflecting such advice, and some claimed equivocation in Faries' description of the August visit. The evidence to support the finding of the Commission consists of the testimony of Faries that such advice was given, the admission by Dr. Thomasson that the offering of such advice would not be unreasonable for such a medical problem, and the results of an examination by Dr. Levy. It seems that an inference might be drawn from Dr. Levy's assessment of Faries' ankle injury that the injury could well have been bothersome enough to prompt a visit to the doctor in August of 1972.

■ In our opinion, the factual decision here basically involves an assessment of the

credibility of the witnesses. It is part of the Commission's duty to make such credibility judgments, *Brown v. Griesedieck Western Brewing Company of Missouri*, 250 S.W.2d 803, 809 (Mo.App.1952); *McAdams v. Seven-Up Bottling Works*, 429 S.W.2d 284 (Mo.App.1968) and *Deatherage v. Churchill Truck Lines, Inc.*, supra, 469 S.W.2d at 661. In the present case, there was no conflicting assessment of credibility by a referee. The referee's decision, which is three lines long, simply found the employee's claim barred by the statute of limitation. Such a finding is ambiguous since it could suggest that the advice to soak the ankle was not, in fact, given or that the advice even if given did not amount to medical treatment so as to toll the statute. Additionally, we note that a credibility determination by the referee is not binding on the Commission, *Diebold v. Great Atlantic and Pacific Tea Co.*, 241 S.W.2d 31, 34 (Mo. App.1951) and *Douglas v. St. Joseph Lead Co.*, 231 S.W.2d 258, 261 (Mo.App.1950).

■ Once again, we recognize that a reviewing court is not at liberty to substitute its own judgment for that of the Commission and may set aside an award only in the instance where there is not substantial competent evidence to support the award, *Webb v. Norbert Markway Construction Co.*, 522 S.W.2d 611, 614 (Mo.App.1975); *Smith v. Plaster*, 518 S.W.2d 692, 696 (Mo. App.1975) and *Freeman v. Callow*, 525 S.W.2d 371, 372 (Mo.App.1975). In the present case, there is substantial competent evidence to support the award. We, therefore, adopt the factual finding of the Commission that the employee was advised in August, 1972, to take warm soaks for his ankle.

ACF, Inc., then argues that even if such advice was given it did not constitute "medical treatment" so as to toll the statute of limitation. Initially the scope of appellate review of this finding of the Commis-

---

2. 29A Mo. Digest, Workmen's Compensation ☜1939.2.

3. 29A Mo. Digest, Workmen's Compensation ☜1939.7.

sion might be somewhat different than that previously discussed in connection with the purely factual determination that the advice was given. Under Missouri law:

"[A]wards of the Commission 'which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction. . . . ' "

*Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292, 297 (Mo.1965). See also *Williams v. S. N. Long Warehouse Co.*, 426 S.W.2d 725, 733 (Mo.App.1968) and *Williams v. Anderson Air Activities*, 319 S.W.2d 61, 65 (Mo.1965). The line to be drawn however between questions of fact and questions of law is at best a hazy one. *Gordon v. Puritan Chemical Co.*, 406 S.W.2d 822, 826 (Mo.App.1966). The determination of whether particular advice amounts to "medical treatment" tolling the statute of limitation seems to be a good example of the overlap.

Before examining that point in this case, we explain what we think is an appropriate approach in determining whether particular advice equals "medical treatment." It is our understanding that actions under the Workmen's Compensation statutes are authorized so as to provide the injured employee with a mechanism to recover compensation from an employer who is no longer furnishing such care and compensation voluntarily. The statute of limitation in Workmen's Compensation actions is intended to prevent claims from lying unfiled indefinitely and becoming stale, *Dupree v. Yorkshire Cleaners, Inc., supra*, 454 S.W.2d at 610–11 and *Morgan v. Krey Packing Company, supra*, 403 S.W.2d at 671. If we look to the purpose of the statute of limita-

tion, it seems reasonable that the determination as to whether particular advice to the employee should be labelled as "medical treatments", should be made on the basis of whether such advice reasonably appears to reflect the employer's continued provision of aid designed to cure or relieve the effects of the injury. If the advice does not reflect continued provision of care by the employer, the employee would be reasonably alerted to the fact that an action under the Workmen's Compensation Act should be filed. If the advice appears to be part of the continued care by the employer, the employee would not be alerted to the necessity of filing suit.

ACF, Inc., contends that the August 1972 visit to Dr. Thomasson cannot be termed "medical treatment" because the visit was intended solely for the purpose of "finalizing" the case; that is, preparing a written report for disposition of the employee's claim. This contention of the employer raises questions of law and fact. We recognize, as a matter of law, that an examination conducted merely to allow the employer to determine questions of causality or liability generally do not constitute "medical treatment" so as to toll the statute,[4] *Bryant v. Montgomery Ward & Co.*, 416 S.W.2d 195, 200 (Mo.App.1967) and *Myers v. Cap Sheaf Bread Co.*, 354 Mo. 943, 950, 192 S.W.2d 503, 506 (Mo.Banc 1945) (concurring opinion by Hyde, J.). Under our suggested approach to defining "medical treatment" under the statute, this seems reasonable. If the employee is clearly informed, or if the circumstances clearly indicate, that the examination is solely for these purposes, the employee should be reasonably alerted to the fact that the employer is no longer providing care.[5] Involved

---

4. See also e. g., *Webb v. Rossville Home and Auto Supply Co.*, 483 S.W.2d 579 (Tenn. 1972); *Schwarz v. Federal Shipbuilding and Dry Dock Co.*, 16 N.J. 243, 108 A.2d 417, 420 (N.J.1954); *Thompson v. Swenson Const. Co.*, 158 Kan. 49, 145 P.2d 166, 169 (Kan.1944); Schneider, Workmen's Compensation Text, Supp. Vol. III (1959) at p. 438.

5. It has been suggested that even an examination for this purpose could be viewed as tolling the statute if the employee was not informed that this examination was any different in purpose than several prior medical examinations which the employee had received in the course of treatment of an injury, *Sampson v. Thornton*, 8 N.J. 415, 86 A.2d 117 (1952).

here, however, is the underlying fact question of whether the examination was conducted for that purpose. It seems appropriate that this underlying fact question should be reviewed according to the previously discussed "weight of the evidence" standard. When evaluated by that standard, the Commission's implicit finding that the August 1972 visit was not solely for that purpose is not insupportable. Dr. Thomasson testified that the examination was solely for that purpose. In contradiction to that testimony, there are two important items. First, the employer has suggested that there is some uncertainty as to why Faries came to Dr. Thomasson in August of 1972. There was no suggestion that it was pursuant to an appointment which would seem likely if the visit was intended by the employer for the finalizing of the case. Secondly, as suggested by the employee, it is difficult to imagine a reason for the employer to require an examination to determine disability and liability more than a year after the actual injury. By August, 1972, absent any conduct of the employer which would toll the statute, the employee's Workmen's Compensation claim would already have been barred by the statute of limitation.

In the present case, the employer's argument about the limited purpose of the August 1972 visit may be irrelevant. It is the advice to take warm soaks which was given during that visit that is asserted to equal "medical treatment" so as to toll the statute. Once again, the analysis of this portion of the employer's argument should be made in light of the purposes of the statute of limitation and statutorily created conditions for tolling the statute.

The employer argues that the advice to take warm soaks cannot constitute "medical treatment" under the statute because such advice is mere layman's advice. The argument is based on language found in *Lutman v. American Shoe Machine Co.*, 151 S.W.2d 701 (Mo.App.1941). In *Lutman*, the employee was afflicted with a lung disease, pneumoconiosis, alleged to be a result of breathing dust generated in the employee's job. Though not expressly identified by the *Lutman* court as a ground for its decision, there was some expert testimony offered in the case that the lung condition was incurable, 151 S.W.2d at 705. The advice given, which was alleged to equal "medical treatment" tolling the statute, consisted of a recommendation to the employee to wear a mask to prevent further inhalation of the dust. In holding this advice insufficient to toll the statute, the *Lutman* court observed:

> "As to Dr. Reuter's advice that respondent be taken off the work in question or be given a mask to wear 'if the dust was aggravating him', we do not believe it can reasonably be said that such advice was 'medical treatment.' It is not even suggested that medicines or drugs were advised or given by the doctor. It certainly was not 'surgical treatment' or 'hospital treatment'. Furthermore, the advice was not given to 'cure and relieve from the effects of the injury' but was for the purpose of preventing future aggravation thereof. *The grouping of the words 'medical, surgical, and hospital treatment' by the Legislature shows plainly what the lawmakers had in mind, and clearly does not include mere diagnosis, nor can it be said to include advice that could be given by a layman.* . . ." (Emphasis added.) (151 S.W.2d at 709)

We do not think the language of *Lutman* impels a conclusion in favor of the employer. The advice to wear a mask at work would not reasonably be understood to constitute a continued course of care designed to cure and relieve from the effects of the injury. The advice in *Lutman* would seem directed simply to the prevention of further aggravation of the lung condition. More importantly, in the present case, the focus of the employer's argument is on the language appearing at the end of the quotation. Our reading of the opinion does not suggest that the phrase "advice that could be given by a layman" enunciates an acid

test for defining "medical treatment" under the statute. Rather, it seems to constitute only one factor in assessing whether the advice in a particular case would reasonably appear to be part of a continued course of care designed to cure or relieve from the effects of an injury. In *Morgan v. Krey Packing Co., supra,* the employer's furnishing of an Ace bandage for the employee's knee injury was viewed as constituting medical service. It seems that wearing an Ace bandage for a knee injury could be characterized as "advice that could be given by a layman." Is advice to rest in bed, take two aspirins and drink plenty of fluids layman's advice?

■ We hold, under the circumstances of this case, that advice to take warm soaks for Faries' ankle injury was "medical treatment" so as to toll the statute of limitation. While it is true such advice was not particularly technical; on the other hand, it was the initially prescribed curative technique and was recognized by Dr. Thomasson as a reasonable remedy for persistent ankle trouble. Consequently, the advice to take warm soaks would appear to be part of a continued course of care.

■ The final contention of the employer is that the Commission was without jurisdiction to award compensation to the employee when the referee had denied compensation. The employer asserts that the Commission may only make an award "ending, diminishing or increasing the compensation previously awarded." The language is taken from § 287.470, RSMo 1969. That statutory section relates, however, only to the powers of the Commission to modify the amount of awards in light of changes in conditions of the employee, *Vandaveer v. Reinhart & Donovan Const. Co.,* 370 S.W.2d 156, 158 (Mo.App.1963); *Winschel v. Stix, Baer & Fuller Dry Goods Co.,* 77 S.W.2d 488 (Mo.App.1935) and *State ex rel. Sei v. Haid,* 332 Mo. 1061, 61 S.W.2d 950 (1933). Another section of the statute, § 287.480, is the general statutory authorization for the Commission's review of the referee's determination. Under this latter section, Missouri courts have recognized the validity of a Commission award of compensation where the referee had previously denied all compensation, *Govreau v. Farmington Transfer Co.,* 473 S.W.2d 750, 751, 756 (Mo.App.1971) and *Peet v. Garner Oil Co.,* 492 S.W.2d 103, 105 (Mo.App.1973). We hold that the Commission is not jurisdictionally disabled from awarding compensation by the referee's denial of compensation.[6] The

6. The two jurisdictional statutes involved are:

"287.470 Commission may review and change award

Upon its own motion or upon the application of any party in interest on the ground of a change in condition, the commission may at any time upon a rehearing after due notice to the parties interested review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter, and shall immediately send to the parties and the employer's insurer a copy of the award. No such review shall affect such award as regards any moneys paid."

"287.480 Application for review—commission shall act

If an application for review is made to the commission within twenty days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, or, if considered advisable, as soon as practicable

hear the parties at issue, their representatives and witnesses *and shall make an award and file it in like manner as specified in section 287.470.* Any notice of appeal, application or other paper required under this law to be filed with the division or the commission shall, when mailed to and received by the division or the commission, be deemed to be filed as of the date endorsed by the United States Post Office on the envelope or container in which such paper is received. In instances where the last day for the filing of any such paper falls on a Sunday or legal holiday, the filing shall be deemed timely if accomplished on the next day subsequent which is neither a Sunday or a legal holiday." (Emphasis added.)

The underscored portion of § 287.480 is suggested by the employer as a provision limiting the power of the Industrial Commission in reviewing decisions of a referee. It seems more likely that the language of § 287.480 refers only to the procedural aspects of a review by the Commission; that is, sending a copy of the award to the parties and the employer's insurer.

award in the present case of compensation for 20% permanent partial disability is supported by the record.

The judgment of the trial court affirming the award of the Industrial Commission is affirmed.

SIMEONE, P. J., and GUNN, J., concur.